**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| eTOOL DEVELOPMENT, INC. and | § | |
| eTOOL PATENT HOLDINGS CORP., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 2:08-CV-196-WCB |
| | § | |
| NATIONAL SEMICONDUCTOR | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the plaintiffs' motion for reconsideration of orders granting the defendant's motions for summary judgment of noninfringement based on the "specialty component" and "formulation" limitations of the patent in suit (Dkt. No. 368). The Court DENIES the motion.

**I.      Background**

In the underlying lawsuit, plaintiffs eTool Development, Inc., and eTool Patent Holdings Corp. (collectively, "eTool") allege that National Semiconductor Corporation's WEBENCH system infringes several claims of U.S. Patent No. 7,113,919 ("the '919 patent"). Following claim construction, National filed motions for summary judgment in which it argued that its accused products do not infringe the "specialty component" and "formulation" limitations of the asserted claims as those terms were construed by the Court. Following full briefing and oral argument, the Court issued an order on December 27, 2011, granting National's motion for summary judgment on the "specialty component" limitation of the asserted claims of the '919 patent. After reviewing the parties' submissions, the Court agreed with National that the

evidence offered by eTool failed to show that there is a genuine dispute of material fact with respect to that limitation. Dkt. No. 359. Several weeks later, the Court issued an order in which the Court granted National's motion for summary judgment on the "formulation" limitation of the asserted claims of the '919 patent. After again reviewing the parties' submissions, the Court agreed with National that the evidence offered by eTool failed to show that there is a genuine dispute of material fact with respect to that limitation. Dkt. No. 362 at 17-24. Because each of the asserted claims of the '919 patent contains both the "specialty component" limitation and the "formulation" limitation, the Court held that eTool's failure to show that it could survive summary judgment on either of those limitations meant that all of eTool's infringement claims had to be dismissed.

On February 10, 2012, eTool filed a motion for reconsideration of both of the Court's noninfringement orders. Dkt. No. 368. As part of its motion, eTool attached ten exhibits and a supplemental declaration from its expert, Dr. Oded Gottesman. To Dr. Gottesman's declaration, eTool attached an additional 30 exhibits, consisting of thousands of pages and more than 100 individual files. All of the new evidence pertains to the claim term "specialty component." eTool contends that its supplementation of the record in its motion for reconsideration is justified because the Court, in its orders granting summary judgment of noninfringement, "altered Judge Ward's claim construction," and that the new evidence was needed to "address[] this new claim construction."[1] National opposes eTool's attempt to supplement the record and argues that the motion for reconsideration should be denied.

---

[1]   Judge T. John Ward presided over this case prior to his retirement from the bench. Judge Ward entered a claim construction order in this case on September 13, 2011. Dkt. No. 175. Upon being assigned the case following Judge Ward's retirement, this Court accepted Judge Ward's claim construction for purposes of the subsequent proceedings. Although the

For the following reasons, the Court agrees with National and denies eTool's motion for reconsideration.

## II.      Applicable Legal Standard for Reconsideration

Because the Court's summary judgment orders were not part of a final judgment in this case, eTool's motion for reconsideration falls under Rule 54(b) of the Federal Rules of Civil Procedure, which provides in pertinent part that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment."  Under that rule, a district court has the discretion to reconsider and revise its prior orders without the timing restrictions and jurisdictional constraints that limit the court's authority to amend a judgment under Rules 59(e) or 60(b) of the Federal Rules of Civil Procedure.  See Saqui v. Pride Cent. Am., LLC, 595 F.3d 206, 210-11 (5th Cir. 2010); Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990).

Although the source of the court's authority to revise or amend an order or judgment is different for interlocutory orders than for final orders or judgments, many of the same policy considerations apply both to motions for reconsideration under Rule 54(b) and to motions for reconsideration under Rule 59(e).  Accordingly, district courts (including this court) frequently apply the same standards to the two.  See Triton Tech of Tex., LLC v. Nintendo of Am., Inc., No. 2:10-CV-328, 2012 WL 2036411, at *1 (E.D. Tex. June 6, 2012) (Gilstrap, J.) ("It is this Court's practice to consider motions to reconsider interlocutory orders under the standard of Federal Rule of Civil Procedure 59(e)."); Jacoby v. Trek Bicycle Corp., No. 2:11-CV-124, 2011 WL 3240445, at *1 (E.D. Tex. July 28, 2011) (Ward, J.) (same); Morgan v. Plano Indep. Sch.

---

Court did not preclude either party from seeking a modification of Judge Ward's claim construction order, neither has done so.

Dist., No. 4:04-CV-447, 2008 WL 686711, at *1 (E.D. Tex. Mar. 10, 2008) (Schell, J.) ("Rule

59(e) furnishes the appropriate standard" for reconsideration of an interlocutory order); Helena

Labs. Corp. v. Alpha Scientific Corp., 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (Clark, J.)

(applying Rule 59(e) standard to motion for reconsideration of order granting partial summary

judgment); see also Nierman v. Ohio Cas. Ins. Co., No. 10-0319, 2012 WL 1039683, at *3 (W.D.

La. Mar. 28, 2012) (same considerations that apply to Rule 59(e) motions apply to Rule 54(b)

motions, including "whether the movant is attempting to rehash its previously made arguments

or is attempting to raise an argument for the first time without justification"); Brown v. Wichita

Cnty., Tex., No. 7:05-CV-108-O, 2011 WL 1562567, at *3 (N.D. Tex. Apr. 26, 2011)

("considerations similar to those under Rules 59 and 60 inform the Court's analysis"); Iniekpo v.

Avstar Int'l Corp., No. SA-07-CV-879-XR, 2010 WL 1190810, at *1 (W.D. Tex. Mar. 25, 2010)

("This Court utilizes the standards of Federal Rule of Civil Procedure 59 to inform its analysis in

considering a motion for reconsideration [of an interlocutory order]."); Berk-Cohen Assocs.,

LLC v. Landmark Am. Ins. Co., Nos. 07-9205, 07-9207, 2009 WL 3738152, at *2 (E.D. La.

Nov. 5, 2009) (discretion to reconsider interlocutory orders "is exercised sparingly to forestall

the perpetual reexamination of orders and the resulting burdens and delays"); T-M Vacuum

Prods., Inc. v. TAISC, Inc., No. H-07-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008)

("Rule   59(e)   legal   standards   are   applied   to   motions   for   reconsideration   of

interlocutory orders. . . .   Like a motion under Rule 59(e), a motion to reconsider may not be

used to relitigate old matters, or to raise arguments or present evidence that could have been

raised before the entry of the judgment or order.").   Applying the Rule 59(e) standard to a

request for reconsideration of orders granting summary judgment makes particularly good sense

in the context presented in this case, where the orders granting summary judgment would have

resulted in a final judgment but for the happenstance that the defendant had counterclaims that have not yet been finally adjudicated.

In applying the Rule 59(e) standards set forth by the Fifth Circuit to a motion for reconsideration of an interlocutory order, this court has set forth the principles that govern this motion. First, the court has stated that motions for reconsideration are designed to "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Helena Labs., 483 F. Supp. 2d at 539, quoting Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989). Second, the court has noted that "motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of judgment or to re-urge matters that have already been advanced by a party." Helena Labs., 483 F. Supp. 2d at 539, quoting Resolution Trust Corp. v. Holmes, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994). Third, the court has stated that district court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Verdin v. Fed. Nat'l Mortg. Ass'n, No. 4:10-CV-590, 2012 WL 2803751, at *1 (E.D. Tex. July 10, 2012) (Mazzant, M.J.). Rather, the court has explained, litigants "are expected to present their strongest case when the matter is first considered." Kazmi v. BAC Home Loans Servicing, LP, No 4:11-CV-375, 2012 WL 1899556, at *1 (E.D. Tex. May 24, 2012) (Schneider, J.).

The Second Circuit has employed essentially the same standards to motions for reconsideration of interlocutory decisions. That court, like this one, has noted that although district courts have broad discretion under Rule 54(b) to revisit earlier interlocutory orders, that discretion is subject to the caveat that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322

F.3d 147, 167 (2d Cir. 2003).  Thus, "those decisions may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'"  Id., quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

Summarizing the circumstances in which a party is entitled to reconsideration under Rule 54(b), this court has followed a long line of Fifth Circuit cases holding that in order to justify reconsideration under Rule 59(e), the moving party ordinarily must show "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice."   Jacoby, 2011 WL 3240445, at *1, quoting In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002); see also Triton Tech, 2012 WL 2036411, at *1; Wi-Lan, Inc. v. Acer, Inc., Nos. 2:07-CV-437, 2:07-CV-474, 2010 WL 5559546, at *2 (E.D. Tex. Dec. 30, 2010) (Ward, J.); Beneficial Innovations, Inc. v. Blockdot, Inc., Nos. 2:07-CV-263, 2:07-CV-555, 2010 WL 2246291, at *2 (E.D. Tex. June 3, 2010) (Ward, J.).

When new evidence is submitted with a motion for reconsideration, the court must determine whether to consider that evidence on the basis of "(1) the reasons for the [moving party's] default, (2) the importance of the evidence to the [moving party's] case, (3) whether the evidence was available to [the moving party] before [it] responded to the summary judgment motion, and (4) the likelihood that the [nonmoving party] will suffer unfair prejudice if the case is reopened."  Ford v. Elsbury, 32 F.3d 931, 937-38 (5th Cir. 1994).

## III.    Discussion

Although the Court recognizes that it has discretion in deciding whether to reconsider an interlocutory order, the proper exercise of that discretion is governed by the principles set forth

by In re Benjamin Moore, 318 F.3d at 629.  In accordance with a substantial body of case law from the Fifth Circuit, those principles counsel against granting a motion for reconsideration except under certain circumstances, none of which are present here.  See, e.g., Waltman, 875 F.2d at 473 (reconsideration motion allows party "to correct manifest errors of law or fact or to present newly discovered evidence"); Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co., 542 F.3d 1053, 1058 (5th Cir. 2008) (same; motions for reconsideration "cannot be used to raise arguments that could, and should, have been made before the judgment issued"); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 344-45 (5th Cir. 2007) (same); Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990) (same); Helena Labs., 483 F. Supp. 2d at 539; Resolution Trust, 846 F. Supp. at 1316.  In this case, there has been no change in intervening law, nor has eTool presented any new evidence not previously available to it. Although eTool argues it has "shown that there is a need to correct a clear error of law based upon the application of unduly narrowed claim constructions," the Court concludes, for the reasons set forth below, that it did not alter Judge Ward's claim construction in its orders granting summary judgment of noninfringement to National.  Accordingly, the Court finds that reconsideration of its previous orders is not warranted.

### A.    Claim Construction

The question whether to grant the motion for reconsideration hinges mainly on whether, as eTool contends, the Court modified Judge Ward's construction of the claim terms "specialty component" and "formulation" in its summary judgment orders.  The Court concludes that it did not.

### 1.      Specialty Component

Judge Ward construed the term "specialty component" to mean "a particular component that is used in combination with other components, where the 'specialty component' is non-fungible, is not purchased by customers solely based on its price, and has a limited number of competitive alternatives."  Dkt. No. 175 (Claim Construction Order) at 14.  eTool argues that in its summary judgment order the Court modified that claim construction (1) when it stated that the products featured in National's WEBENCH software are "not unique, but have close competitive alternatives," Dkt. No. 359 (Summary Judgment Order) at 20; (2) when it stated that "differences between Specialty Components are 'significant to customers,'" Dkt. No. 368 (Mot. for Reconsideration) at 1 (citing Dkt. No. 359 at 19); and (3) when it stated that "Specialty Components are components that have little or no price competition," Dkt. No. 368 at 1.  The Court concludes that each of those alleged modifications is not a modification at all and that the Court's order was fully consistent both with Judge Ward's construction and with the patent itself.

First, the Court's statement that the products featured in National's WEBENCH software are "not unique, but have close competitive alternatives," does not reflect a modification of Judge Ward's claim construction order.  Instead, the statement was merely an observation made by the Court based on the evidence presented to it by the parties.  Immediately before noting that the products are "not unique, but have close competitive alternatives," the Court explicitly found the following:

> eTool has failed to offer evidence from which a reasonable jury could conclude (1) that the products featured in National's WEBENCH software are nonfungible, i.e., not materially different from other products designed for similar uses, (2) that those products have only a limited number of competitive alternatives, and (3) that the products do not compete solely based on price.

Dkt. No. 359 at 19.   That statement tracked Judge Ward's claim construction essentially verbatim.   The subsequent statement that the products are "not unique, but have close competitive alternatives," was simply an observation in support of that proposition.   In its motion for reconsideration, eTool mentions several other statements made by the Court that allegedly constitute modifications of Judge Ward's claim construction.   Dkt. No. 368 at 7.   But those statements, too, were merely evidence-based observations supporting the Court's conclusion, which it reaffirms today, that in view of the evidence that eTool proffered in response to National's summary judgment motion, no reasonable jury could conclude that (1) the products featured in National's WEBENCH software are nonfungible, (2) that those products have a limited number of competitive alternatives, and (3) that the products are not purchased by customers solely based on price.

eTool next argues that the Court's use of the phrase "significant to customers," Dkt. No. 359 at 19, constitutes a modification of Judge Ward's claim construction.   Dkt. No. 368 at 1, 10. The Court disagrees.   In its opposition to National's motion for summary judgment, eTool attempted to show that minor differences between National's parts and its competitors' parts are "significant" to customers.   Dkt. No. 295 (eTool's Opp. to National's Mot. for Summary Judgment) at 8.   Presumably, eTool hoped to show that if minor differences become significant in the context of circuit performance, parts with only minor differences may not be competitive alternatives to each other, notwithstanding the apparent insignificance of their differences.   Id. When this Court used the term "significant to customers" in its summary judgment order, the Court was merely explaining that, although eTool argued that apparently minor differences between National's parts and its competitors' parts are significant, it had failed to produce any

evidence on that point.  Dkt. No. 359 at 19.  The Court was not, as eTool suggests, using that phrase to modify Judge Ward's claim construction.

Finally, eTool argues that the Court's use of the phrase "vigorous price competition" reflects a modification of Judge Ward's claim construction.  Again, the Court disagrees.  Just as with the Court's use of the word "unique," discussed above, the Court's use of the phrase "vigorous price competition" immediately followed the Court's conclusion that eTool failed to offer evidence "that the products do not compete solely based on price."  Dkt. No. 359 at 19. The Court's statement that the evidence reveals that the competing products are subject to vigorous price competition was merely an observation regarding the evidence supporting the Court's conclusion.  The Court's observation is fully consistent with Judge Ward's claim construction and does not constitute a modification of that prior construction of the claim term "specialty component."

To summarize, eTool has failed to show that the Court modified Judge Ward's construction of the term "specialty component."  eTool has simply latched on to certain words and phrases that the Court used to explain its previous disposition and now alleges that those words and phrases constitute an improper narrowing of the claim construction.  However, none of those words or phrases was used in a manner that modified Judge Ward's claim construction order, expressly or by implication.  The Court notes that eTool's position comes close to suggesting that, once a court issues its claim construction order, the court may never use any language to discuss infringement other than the precise language appearing in its order.  That position is clearly untenable.  A court must be free to analyze and evaluate claims of infringement without limiting itself to the precise words used in the claim construction order, so long as the court's analysis is consistent with the claim construction order and with the patent

itself.  The Court neither adopted nor intended to adopt any alteration of Judge Ward's claim construction in its order granting summary judgment of noninfringement to National.  The Court therefore rejects eTool's argument that the Court modified Judge Ward's construction of the term "specialty component" and that the modification justifies the introduction of new evidence of infringement.

### 2.      Formulation

Judge Ward construed the term "formulation" to mean "a product specification that imparts the understanding to build at least a prototype product."  Dkt. No. 175 at 22.  eTool argues that in its summary judgment order the Court modified that construction by adding the limitations of "finished circuit formulation" or "final product."  Dkt. No. 368 at 23.  The Court disagrees.

The Court used the term "finished circuit formulation" merely as a way of characterizing the differences between National's and eTool's competing arguments on summary judgment. Dkt. No. 362 (Summary Judgment Order) at 21.  The Court used the term "final product" twice: once to refer to the "formulation" being the "final product of combining . . . components," as opposed to "a collection of materials to be used in determining which components to select," and on another occasion to refer to the example of a paint formulation in the patent, which consisted of "all of the constituents of the final product, along with the steps used to combine those components."  Id.  Thus, the Court did not use the term "final product" to suggest that the claim term "formulation" would not be satisfied unless the formulation enabled the user to construct a "final product," as opposed to a prototype.  Id. at 21-22.  Instead, the Court expressly adhered to Judge Ward's construction of the term "formulation," i.e., "a product specification that imparts the understanding to build at least a prototype product."  In so doing, the Court rejected eTool's

position that the information or template tables from which the components that make up the product specification are selected constitute a "formulation."

eTool's other arguments on this point constitute, in essence, requests that the Court revisit Judge Ward's construction of the term "formulation." Thus, eTool argues that the claims "differentiate between Formulation and Technical Support Information." Dkt. No. 368 at 26. But Judge Ward previously rejected that argument and construed "formulation" to be "a product specification that imparts the understanding to build at least a prototype product," not merely tables or technical support information from which product specification components may be selected. The Court concludes that it did not modify Judge Ward's claim construction in its order granting summary judgment of noninfringement to National, and it declines to modify Judge Ward's claim construction now.

### B. Reconsideration and New Evidence

#### 1. Specialty Component

Because the Court did not modify Judge Ward's claim construction in its order granting summary judgment of noninfringement to National, eTool has failed to show that circumstances warranting reconsideration are present in this case. See Waltman, 875 F.2d at 473; Jacoby, 2011 WL 3240445, at *1. In particular, eTool has failed to show why it failed to introduce in response to National's summary judgment motion the evidence that it has now offered on reconsideration. Nonetheless, given the importance of the issue to the disposition of the litigation, the Court will separately consider whether eTool has a valid excuse for its failure to introduce that evidence at the summary judgment stage and therefore whether the court should exercise its discretion to consider the new evidence even though the applicable standards for reconsideration have not been satisfied. Because eTool's new evidence bears only on the "specialty component" issue,

the question of the admissibility of that new evidence has no effect on the Court's ruling on the "formulation" issue.

As noted above, eTool submitted dozens of exhibits and a supplemental expert declaration along with its motion for reconsideration, all of which was directed to the "specialty component" limitation. The Fifth Circuit has stated that "[i]n deciding whether to consider late-filed evidence, the district court must strike a proper balance between two competing interests: the need to bring litigation to an end and the need to render just decisions on the basis of all the facts." Ford, 32 F.3d at 937. In striking that balance, the court should consider "(1) the reasons for the [moving party's] default, (2) the importance of the evidence to the [moving party's] case, (3) whether the evidence was available to [the moving party] before [it] responded to the summary judgment motion, and (4) the likelihood that the [nonmoving party] will suffer unfair prejudice if the case is reopened." Id. The Court finds that those factors weigh against considering eTool's new evidence.

Given the Court's conclusion that it did not modify Judge Ward's claim construction, eTool has presented no reason for its default. All of the "new" evidence that eTool now proffers could have and should have been presented in its initial opposition to the motion for summary judgment. The evidence was undeniably available to eTool when eTool prepared its initial opposition. The bulk of the new evidence concerns a particular website, www.allxref.com, that was referenced by eTool in its initial opposition. Dkt. No. 295 at 2, 7. While eTool's new evidence appears to reflect an effort to shore up a case that was found insufficient at the summary judgment stage, that evidence should have been presented in eTool's initial opposition. "It is well settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of judgment or to re-urge matters that have

already been advanced by a party." Helena Labs., 483 F. Supp. 2d at 539.  The first and third

factors identified by the Fifth Circuit as bearing on the question whether to admit new evidence

therefore weigh heavily against doing so in this case.

The second and fourth factors do not tip the balance in eTool's favor.  The newly

presented evidence does provide additional support for eTool's position on the "specialty

component" limitation, as it provides support for eTool's contention that National's parts are

nonfungible and have a limited number of competitive alternatives.  Although National will not

suffer prejudice by being denied an opportunity to respond to that evidence, it will nonetheless

suffer prejudice in that it devoted significant time and resources to the summary judgment

proceedings, and eTool's failure to put forth its best evidence prior to the motion for

reconsideration unnecessarily prolongs the litigation and increases National's costs.

Additionally, to the extent that the new evidence falls outside of what appeared in eTool's expert

reports, National may be prejudiced in rebutting that evidence due to the fact that National

expected eTool to present the opinions of its experts long ago, but is now seeing new expert

materials for the first time in the motion for reconsideration.  The Court therefore finds that

while the second factor weighs in favor of considering the new evidence, the fourth factor

weighs against considering it.  In sum, the factors weighing against the consideration of new

evidence outweigh the factors that favor considering the new evidence.  Consequently, the Court

holds that the new evidence should not be considered.

eTool argues that the circumstances presented in Ford are similar to those presented here.

In Ford, the Fifth Circuit determined that "the district court abused its discretion in refusing to

consider the additional evidence proffered" by the plaintiffs.  32 F.3d at 937.  There the court

noted that the first factor (reason for the default) and third factor (whether the evidence was

previously available) "may weigh against plaintiffs." Id. at 938.  The second factor (importance of the evidence) and fourth factor (prejudice to nonmoving party) weighed in favor of the plaintiff.  Id.  eTool suggests that the Fifth Circuit viewed the second factor as the most critical factor and urges this Court to do the same.  A key difference between that case and this one is that in Ford, the district court had granted summary judgment sua sponte, and it was unclear whether the plaintiffs had ever had an opportunity to present their best evidence.  See id. ("[T]he circumstances here, as best we can glean from the record, cause us to question the extent to which plaintiffs were on notice that they were required to make an evidentiary showing . . . .").  By contrast, eTool had a full and fair opportunity to make its evidentiary showing in response to National's summary judgment motions.   In fact, eTool submitted a substantial amount of evidence in opposition to those motions for summary judgment, including dozens of exhibits in addition to declarations and expert reports.  Accordingly, unlike in Ford, there can be no question that eTool had sufficient opportunity to gather and submit its best evidence in opposition to National's motions.  eTool's motion for reconsideration is in large measure an attempt to submit evidence and arguments that eTool could have—and should have—submitted in its initial opposition.

Setting aside the new evidence that eTool has submitted in connection with its motion for reconsideration and its argument that the Court has modified Judge Ward's claim construction, eTool's motion consists largely of arguments that were previously considered and rejected by the Court.  The Court reaffirms its original decision rejecting those arguments.

eTool presents two new arguments that do not appear to rely on the new evidence.  First, it argues that National's WEBENCH-enabled parts are specialty components because National provides technical support information for those parts to users.  eTool argues that "Judge Ward's

[claim construction] Order notes that technical service is a key distinction for the sale of a Specialty Component." Dkt. No. 368 at 15. However, it is unclear what portion, if any, of Judge Ward's claim construction order supports that assertion. In any event, the construction of "specialty component" makes no reference to technical service. Accordingly, the fact that National provides technical information with respect to WEBENCH-enabled parts does not show that those parts constitute specialty components.

Second, eTool argues that because many of National's parts are labeled "patent pending," "proprietary," "patented," or the like, those parts must not have competitive alternatives. The Court rejects that argument. The Court has already rejected the argument that parts must be identical to be competitive alternatives to each other. The fact that an item is patented or proprietary does not mean it has no competitive alternatives. Indeed, manufacturers frequently "design around" the patents of their competitors specifically so as to ensure that they have competitive alternatives even to patented products. In response to National's motion for summary judgment, eTool was obligated to produce evidence that National's products have a limited number of competitive alternatives. It failed to do that, and the mere fact that some of National's products are labeled "proprietary" or "patent pending" does not bridge that evidentiary gap.

eTool further contends that the Court erred by refusing to consider a particular slide that eTool attempted to present during the December 20, 2011, hearing on National's motion for summary judgment of noninfringement. In particular, eTool alleges that the slide demonstrates that "National Part LM2676 is <u>not</u> swappable with Micrel part 4685BR." Dkt. No. 368 at 12 (emphasis in original). At the hearing, eTool admitted that the slide had been "prepared . . . for this hearing," and that "different examples" were presented in the briefing and exhibits. Dkt. No.

360 (Pretrial Conf. Tr.) at 122-23.  The Court was therefore justified in declining to consider that evidence because eTool had raised it for the first time during the hearing and had failed to discuss it in its briefs.  In any event, the slide appeared as part of a presentation in which eTool was attempting to show that various National products are specialty components because there are no substitutes with identical specifications.  Id. at 121.  The Court rejected and continues to reject the theory that two products must have identical specifications to constitute competitive alternatives under Judge Ward's claim construction.  That claim construction requires only that a specialty component have a limited number of competitive alternatives.  The Court has never determined that only "swappable, pin to pin substitutes" constitute competitive alternatives. Even if the evidence contained in the slide had been brought to the Court's attention in a timely manner, it would not have been sufficient to enable eTool to avoid summary judgment, because it was merely cumulative of evidence that the Court considered and regarded as insufficient to satisfy eTool's burden in opposing National's summary judgment motion.

The Court also notes that eTool apparently misapprehends a portion of the Court's December 27, 2011, order granting summary judgment of noninfringement to National.  With respect to the slide that the Court declined to consider at the hearing, eTool quotes the Court, asserting that the Court apparently believed "'it [was] not permitted to'" consider the slide.  Dkt. No. 368 at 12, quoting Dkt. No. 359 (Order Granting Summary Judgment of Noninfringement to National) at 14.  The full sentence from which eTool quoted reads:

> In any event, to the extent that eTool seeks to rely on evidence that might be found elsewhere in its infringement contentions or in the record generally— beyond what it has specifically called to the Court's attention in its summary judgment pleadings and exhibits—it is not permitted to do so.

Dkt. No. 359 at 14.  In context, it is clear that the quoted portion of the order was primarily concerned with eTool's attempt to rely on its voluminous infringement contentions without

specifically identifying relevant pages; it was not concerned with the slide from the hearing.  Id. at 12-14.  Additionally, the Court's statement did not concern what evidence the Court believed it was permitted to consider; it was directed at explaining that eTool must expressly call the Court's attention to the specific evidence that it wishes the Court to consider.

The Court disagrees with eTool's assertion that the Court applied a "stringent standard" unsupported by the cases.  Dkt. No. 368 at 13 n.10.  In a case such as this, in which thousands of pages of potential evidentiary material have been produced, and much of it has been submitted to the Court, it is each party's obligation to sift through the evidence and specifically identify the materials that support that party's position on summary judgment.  A party may not simply point to a large volume of evidence and expect the Court to sift through the evidence and identify the important pieces, as eTool did with its infringement contentions in this case.  The cases previously cited by the Court support that proposition.  See  Dkt. No. 359 at 14; see also Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012) ("A district court's decision on summary judgment is largely controlled by what the parties presented.  If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search."); Little v. Liquid Air Corp., 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (inquiry on summary judgment "is limited to the summary judgment record"); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment, especially where, as here, the nonmoving party is well aware of the existence of such evidence.  Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact."); see generally In re Cygnus

Telecomm. Tech., LLC, 536 F.3d 1343 1351-53 (Fed. Cir. 2008) ("'A substantial number of cases have records that fill a drawer or two of a filing cabinet, and some big cases sometimes fill multiple five-drawer file cabinets in the clerks' offices.  A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read.  It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.'"), quoting Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).  eTool's contention that Hernandez and Skotak "merely stand for the proposition that new material cannot be presented on appeal," Dkt. No. 368 at 13 n.10, is wrong.  As shown above, those cases clearly discuss a party's obligations in proceedings before the district court.

### 2.  Formulation

eTool has not submitted new evidence in support of its position on the "formulation" limitation.  Its arguments for reconsideration on that issue consist of either (1) arguments that have already been raised and rejected or (2) arguments that could have and should have been raised in its initial opposition.  In particular, eTool makes the new argument that unpopulated circuit diagrams such as that depicted in Fig. 6A of the '919 patent are stored in the WEBENCH system, and that such unpopulated circuit diagrams constitute "formulations" within the meaning of the '919 patent.  Dkt. No. 368 (Mot. for Reconsideration) at 30-32.  That argument was not made in eTool's initial opposition to National's motion for summary judgment, as eTool acknowledged at the hearing on its motion for reconsideration.

Even if that argument had been properly preserved and were suitable for being raised on a motion for reconsideration, the Court would find it unpersuasive.  The evidence shows that the template tables stored by the WEBENCH system are literally tables of data and nothing more.

See, e.g., Dkt. No. 243 at ¶ 17 (Perry Decl.) ("Exhibits 4 - 8 are excerpts from several of the tables required to generate the schematic itself that is ultimately populated with parts from the parts tables identified below when WEBENCH uses the Circuit Calculator.  In addition, Exhibits 9-13 are excerpts from the various parts tables (i.e., integrated circuits, capacitors, resistors, inductors, diodes) that are used by WEBENCH when it uses the Circuit Calculator to dynamically generate circuit schematics.").  As an example, an excerpt from a template table appears below:

| ID | circuit_id | ComponentName | x_position | y_position |
|---|---|---|---|---|
| 1 | 1 | FEEDBACK_BLOCK | 860 | 760 |
| 2 | 1 | INPUT_BLOCK | 390 | 510 |
| 3 | 1 | LM267X_MAIN_BLOCK | 740 | 510 |
| 4 | 1 | OUTPUT_BLOCK | 1090 | 510 |
| 5 | 2 | Cb | 80 | 130 |
| 6 | 2 | Cin | -260 | -20 |
| 7 | 2 | Cout | 260 | -20 |
| 8 | 2 | D1 | 110 | 20 |
| 9 | 2 | GND | -30 | -140 |
| 10 | 2 | ICin | -260 | 25 |
| 11 | 2 | ICout | 260 | 25 |
| 12 | 2 | IDiode | 110 | -25 |
| 13 | 2 | IIC | -175 | 130 |
| 14 | 2 | IIn | -285 | 90 |

Dkt. No. 243-4 (Ex. 4 to Perry Decl.) at 1.  Based on the evidence set forth by the parties, no reasonable juror could conclude that such a template table constitutes "a product specification that imparts the understanding to build at least a prototype product."  At most, the tables constitute information from which a product specification can be generated.  But Judge Ward explicitly rejected the argument that a mere collection of information that can be used in the generation of a product specification constitutes a "formulation" as that term is used in the asserted claims.  Dkt. No. 175 (Claim Construction Order) at 18-22.

Thus, in its motion for reconsideration concerning the "formulation" limitation eTool has offered no persuasive reason why the Court should reconsider its earlier disposition.  Its motion consists of arguments that the Court has already rejected (and which the Court continues to believe lack merit) and arguments that could have been raised earlier, but were not (and which the Court concludes lack merit).  The Court therefore reaffirms its initial order granting summary judgment of noninfringement on the "formulation" limitation.

## IV.   Conclusion

eTool has not shown that it is entitled to reconsideration of the Court's previous orders. Reconsideration is not appropriate when the party seeking reconsideration is simply "rehashing old arguments or advancing legal theories that could have been presented earlier," Resolution Trust, 846 F. Supp. at 1316, which is largely what eTool is attempting to do in its motion. Moreover, eTool has provided no justification for the Court to consider evidence that eTool has presented for the first time on reconsideration, even though it was available previously.  In light of the general principle that motions for reconsideration are designed for "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence," Waltman, 875 F.2d at 473, eTool has failed to show that it is entitled to relief. Accordingly, eTool's motion for reconsideration is hereby DENIED.

* * * * *

The parties have previously stated that if the Court grants summary judgment of noninfringement in this case, they will request that the Court direct the entry of a final judgment under Fed. R. Civ. P. 54(b) as to the plaintiffs' claims of infringement without addressing the defendant's counterclaims, so that an immediate appeal from the judgment of noninfringement can be taken.  To that end, the parties should move no later than August 9, 2012, either jointly or

separately, for the entry of a judgment under Rule 54(b).  Such motion or motions should state

the basis on which the Court may make the express determination required by Rule 54(b) that

"there is no just reason for delay" in entering judgment until after all of the parties' claims and

counterclaims have been resolved.  See iLOR, LLC v. Google, Inc., 550 F.3d 1067, 1072-73

(Fed. Cir. 2008).

It is so ORDERED.

SIGNED this 31st day of July, 2012.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE